## Boenning's Deed of Trust

486

488

492

494

*Paul Reilly*, guardian and trustee ad litem, except-
ant.

*William M. Boenning*, for trustee, exceptant.

*Rawle & Henderson*, contra.

BOLGER, J., January 1, 1946.—Settlors prescribed in
their deed that among the deductions from gross in-
come should be "the premium paid on any security . . ."
However, they did not specify how or when or in what
amount such deduction should be made. Exceptions
are taken to the amortization method directed by the
adjudication.

The guardian and trustee ad litem insists that "no
plan or scheme or administration . . . should be ap-
proved or sanctioned which contemplates a possible re-
duction of the intact value of the principal, particu-
larly when that would be in violation of the terms of

the deed of trust itself". By inference, we regard this as a demand for immediate lump sum deductions. Counsel for the corporate accountant argues that if any other manner be employed than that advocated by the guardian and trustee ad litem that the simple method of dividing the amount of the premium by the number of years to maturity and deducting such average amount periodically from the interest received should be prescribed.

We have thus before us three possible results. Since the law of Pennsylvania, as pointed out in the adjudication, forbids such deductions in the absence of a direction in the particular instrument, and there is therefore no local authority on the subject, it renders the problem novel. The solutions offered by those States in which deductions are prescribed are set forth in the adjudication.

To deduct from current income the full amount of premiums paid would be not only harsh to the life tenant, but contrary to the intent of the deed. The primary intent of these settlors is that income shall be paid to the life tenant, while the subject of deductions from gross income is obviously a secondary one. To honor the demand of the guardian and trustee ad litem that principal must be preserved at all costs would require that we reverse this order of priority. While it will be obviously impossible to balance accounts between principal and income involving this provision of the deed—because the life tenant cannot die contemporaneously with the call or maturity dates of every bond purchased at a premium—with the result that a slight loss to either principal or income must occur, depending upon the date of such death, we must prefer the method that offers the least injury to the life tenant. That is the method suggested by the auditing judge.

The mode suggested by the trustee was properly overruled because it first gives to income less interest

than the bond is earning and then more, which results in an uneven distribution.

From the authorities, the process laid down in the adjudication is much preferable. Under it the rate of interest which the bond is really to earn is called the basic rate and represents not the rate at which the bond will pay interest throughout the term on the sum originally invested, but is the rate at which it will *pay interest on the sums that remain invested from time to time*. (Italics supplied.) The failure to apply forthwith in reduction of principal all sums deducted from gross income for that purpose and to harmonize the mathematics accordingly would be patently unjust and inequitable. There are extant and readily available accurate statistical tables from which can be ascertained the periodical allocation of principal and interest as well as such remaining invested sums, or the present worth of the bonds, or the "book value" of the investment, as stated in the adjudication. Therefore, we conclude that amortization under such plan is more even, just and business-like, as well as simple from an accounting standpoint.

We agree with the learned auditing judge that preferred stocks were not intended to be classed as "securities" in this deed. The impracticability of determining when such stock is purchased at a premium and the utter impossibility of finding a basis for calculation are sufficient reasons. The authorities generally so recognize.

The account contains a few items of lump deductions. There is, however, no proof that the life tenant knew of such items and the auditing judge has made no finding thereupon. Consequently, there is nothing in the record from which a finding of acquiescence of the life tenant can be made.

The exceptions are dismissed and the adjudication is confirmed absolutely.